Freeman, J.,
delivered tbe opinion of tbe court:
In 1814, tbe directors and commissioners of tbe Memphis & Knoxville Railroad Company petitioned tbe board of mayor and aldermen of tbe town of Pulaski, for a subscription of forty thousand dollars to their capital stock, on such terms and limitations as tbe board might see proper. Tbe question was submitted to a vote of tbe people, and approved by tbe requisite majority. Tbe proposition involved tbe idea of issuing bonds having twenty years to run, each of tbe denomination of five hundred dollars, bearing eight per cent, interest, stock to be issued to tbe corporation equivalent in amount to tbe bonds thus proposed to be issued. As part of tbe proposition, it was agreed that these bonds of five hundred dollars each were to' be issued to pay for tbe expenses incident to a survey of tbe line of the road through Giles county. These bonds were issued, and came into tbe bands of tbe parties plaintiffs in this case before due, and are tbe basis of the present suit.
'We may assume, for tbe purposes of this opinion, that the proceedings, if not perfectly regular, have nothing in them that can fix any right to urge it against the present holders. They stand as innocent purchasers for value. Tbe only defense that can be made available against the liability sought to be enforced, is a want of authority in tbe corporation to issue tbe bonds in question. This is a defense at all times available in such a case, unless it may be tbe doctrine of estoppel in pais may be an exception allowed in certain cases.
The question then, is, did tbe corporaton, under the constitution and laws of tbe state, have tbe power to issue these bonds? If so>, plaintiff was entitled to bis recovery on tbe coupons; if not, defendant should have bad a verdict. It is the case of a subscription to tbe stock of a contemplated railroad. Tbe fact that these particular bonds *117 were to be applied to pay for a specific part of tbe work necessary in tbe construction of tbe road, cannot alter tbe character of the bonds,' nor aid in arriving at a solution of tbe question of power. Whether to be used for this, or any other purpose connected with tbe construction of tbe road, tbe case would be tbe same. Tbe proposition submitted to tbe people, and tbe contract attempted to be made, Avas simply a subscription for forty thousand dollars of stock in tbe corporation, which was expected to build the road, and tbe bonds of tbe corporation (these three included) were to be issued in paying for said stock. By our present constitution, which, in this respect, is tbe same as that of 1834, art. 2, sec. 29, “the general assembly shall have poAver to authorize counties and incorporated towns in this state to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by laxv, and all property shall be taxed according to its value upon tbe principles established in regard to state taxation.” By tbe constitution of 1870, there is added: “But the credit of no county, city, or toAvn, shall be given or loaned to, or in aid of any person, company, association, or corporation, except upon an election to be first held by the qualified voters of such county, city, or town, and the assent of three-fourths of the votes cast at such election.”
We need not examine, discuss, or decide the question whether the addenda gives any additional or different power to the legislature from that conferred in the first clause of the section quoted — that it, to levy taxes for county and corporation purposes, respectively. It suffices that it was decided many years since that a railroad was a county and corporation purpose, and taxes might be levied under authority from the legislature, to be used in aid of such enterprises. It is not improper to say that while this is all now' settled in our state as an original question, the writer of this opinion did not [then] and does not now concur in its correctness. The question, however, is whether, under *118 the statutes existent at tbe time these bonds were authorized, the power to issue them is given. We need not, as we have said, go into the question of the constitutional power to authorize them. We need scarcely say that in order to the issuance of such bonds there must be an express authority given the city or town, either by a general law of the land, or by a special law for this purpose. No such power can be implied, or can be inferred, from any of the ordinary powers of such corporations. “No argument,” says Judge McKinney, in the case of Cook v. Sumner Spinning and Manufacturing Co., 1 Sneed, 714, “can be necessary to show that the authority to purchase stock in a manufacturing establishment, or to issue bonds for the payment thereof, cannot be derived from the power of taxation conferred by the charter.” See also [City of Memphis v. Memphis Gayoso Gas Co.], 9 Heis., 534.
Taxation and payment of all liabilities directly from this means is the normal work of action by such bodies. Bonds on time are not incident to this, and can only be issued' when authority is conferred by lave The old act of 1852, Code, sec. 1142 [Shannon’s Code, sec. 1542a], and- othér provisions of that article, is the basis in our general law of such action as may be taken by counties and corporations in subscribing for stock in railroads running to or contiguous to such towns. It is too clear for argument that'no such authority is found in these sections. The act of January, 1871 [Acts 1870-71, ch. 50], intended to regulate elections, under the constitution, in the first section, simply embodies the authority contained in the constitution as to counties and towns levying taxes.for county and corporation purposes, prescribing in the subsections the conditions and regulations by which the power shall be executed. But there is nothing in this act that can possibly be construed, on any fair principle of construction, to authorize the issuance of these bonds in payment of a subscription of stock in a railroad company. ."What was in *119 tended by tbe reference to “execution of all necessary orders, bonds, and payments, in order to carry out” a loan or credit, we need not now determine. See sec. 2; Code [T. & S.], sec. 491a. It suffices that there is no authority in this act to issue such bonds as are the basis of this suit. The same having been issued without authority of law, are simply void, whether in the hands of innocent purchasers, or others. The case having been tried by the court without the intervention of a jury, and judgment rendered for plaintiffs, that judgment is reversed, and a judgment here rendered for defendant, the corporation.